# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ROBERT LINGLEY,

                Plaintiff,

                v.

BERNARDI'S, INC.
                Defendant.

**C. A. No. 05  10913 WGY**

## DEFENDANT BERNARDI'S, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Pursuant to Local Rule 7.1(B)(1), Defendant Bernardi's Inc. ("Bernardi's") hereby submits this Memorandum of Law in Support of its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).

### INTRODUCTION

Plaintiff Robert Lingley commenced this action against his former employer, Bernardi's, seeking to recover overtime compensation he claims he was entitled to but not paid.   Plaintiff claims that Bernardi's failure to pay him overtime is a violation of both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Massachusetts Wage and Hour Law, specifically G.L. c.151 § 1A.

## SUMMARY OF ARGUMENT

Plaintiff claims that he worked fifty (50) to fifty-five (55) hours per week throughout his employment. Complaint ¶ 13.[1] As will be explained below, Plaintiff received a weekly salary and commissions based on the volume of sales made by the Service Department and appointments Plaintiff booked. Plaintiff now claims, however, that he was entitled to overtime compensation for all the hours worked in excess of forty (40) hours because he was not employed as an executive, administrative or professional function at Bernardi's and he did not "perform duties of a salesman, mechanic or partsman as defined in the Code of Federal Regulations." Id. at ¶ 17. Specifically, Plaintiff claims Bernardi's violated both the FLSA and the Massachusetts overtime law by failing to pay him overtime compensation. Plaintiff's Complaint must be dismissed because he was exempt from the overtime protections contained in the FLSA.

Additionally, with regard to Plaintiff's state law claim, it must be dismissed because Plaintiff failed to file his claim with the Attorney General's office, which is required before commencing a civil action. Moreover, even if Plaintiff properly exhausted his administrative remedies, his claim for overtime compensation under Massachusetts law should fail because he was not eligible for overtime compensation under state law. As such, Plaintiff's state law claim should be dismissed.

Finally, even if this court fails to dismiss Plaintiff's state law claim, this court should refrain from exercising supplemental jurisdiction over the claim once the FLSA claim is dismissed.

---

[1] For purposes of this Motion to Dismiss only, Bernardi's will not challenge Plaintiff's assertion that he worked in excess of forty (40) hours per week while employed by Bernardi's. Bernardi's reserves the right to challenge Plaintiff's assertion if this case is not dismissed.

## FACTUAL BACKGROUND

Bernardi's is an automobile dealership located in Natick, Massachusetts that sells new and used cars as well as service and parts. Complaint ¶¶ 5 and 7. Bernardi's is not a manufacturer of automobiles. Plaintiff was employed by Bernardi's as a Service Advisor from September 23, 2002 until his employment was terminated on or about April 1, 2005. Complaint ¶¶ 5.

As a Service Advisor, Plaintiff was the first line representative between the Service Department and the customer. The Service Advisor was expected to solicit sales from the customer, and ensure that the customer was satisfied with their experience at Bernardi's. To that end, Plaintiff was expected to be flexible in terms of the hours he worked in order to ensure customer satisfaction. See Exhibit A attached to Affidavit of Richard Voss ("Voss Aff."). Indeed, because customer sales and satisfaction were paramount, Plaintiff's hours were dependent on the needs of the customers and his compensation reflected how well he achieved those goals. Id.

As an integral unit of the Service Department, and its chief liaison with the customer, Plaintiff's duties included greeting customers, calling customers with estimates of repair work and soliciting their authorization to do the repairs. Id. As the primary customer contact for the Service Department, Plaintiff answered service phone calls, booked appointments and answered any service related questions. Id. Plaintiff was required to notify the customer of all needed or recommended repairs as well as when the next recommended maintenance was scheduled. Id. Additionally, Plaintiff called customers when the repairs were completed and reviewed the repairs and charges with the customer. Id. If there were any problems with the repairs or if any additional issues

3

arose, Plaintiff served as the primary coordinator for customer repairs and, as such, was required to accurately and timely communicate with the technicians and foreman to ensure the repairs were being performed satisfactorily.  Id.

Plaintiff received a salary and a commission.  Id.; see also Exhibit B attached to Voss. Aff.  The commission plan was based on sales performance and customer satisfaction.  Exhibit B attached to Voss Aff.  In fact, Plaintiff was eligible to earn up to twelve percent (12%) of his weekly salary in commissions.  Id.  Additionally, beginning in May 2003, Plaintiff was paid a commission for every appointment he scheduled. Exhibit C attached to Voss Aff.

## ARGUMENT

### I.    STANDARD OF REVIEW

In assessing a motion to dismiss pursuant to Rule 12(b)(6), the court's task is to determine whether the Complaint alleges facts sufficient to state a cause of action. Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  In so deciding, the court must "accept as true the factual allegations of the complaint, construe all reasonable inferences therefrom in favor of the plaintiffs, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory of the case."  Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 16 (1st Cir. 1998).  To make this determination, the court need not accept plaintiff's "bald assertions" or "unsupportable conclusions."  Id. at 17 (quoting Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)).

The court's inquiry into the viability of the allegations is not limited to the complaint simply because the plaintiff fails to attach a document upon which his/her

allegations rest. Beddall, 137 F.3d at 17. Accordingly, submission of documents essential to plaintiff's claim does not necessarily convert a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) to a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Id.

The entire crux of Plaintiff's claims is premised on his job duties. Unfortunately, Plaintiff's Complaint only partially describes those duties. See Complaint ¶ 8. Because Plaintiff's claims necessarily depend on an examination of his job duties, and Plaintiff refers to his duties in his Complaint, Bernardi's Motion to Dismiss should not be converted to a Motion for Summary Judgment because Bernardi's has submitted a copy of Plaintiff's job description and commission plan. Plaintiff's allegations are dependent on these documents and a review of them is essential to evaluating his claims. Beddall, 137 F.3d at 17.

## II.    PLAINTIFF WAS NOT ELIGIBLE FOR OVERTIME COMPENSATION BECAUSE HE WAS EXEMPT FROM THE FLSA

Plaintiff claims that, as a Service Advisor for Bernardi's, he was entitled to overtime compensation under the FLSA and Massachusetts law. See Complaint ¶¶ 17 and 20-24, 27 and 28. With regard to Plaintiff's FLSA claim, Plaintiff claims he was a non-exempt employee because he did not perform executive, administrative or professional functions, nor did he perform the duties of a salesman, mechanic or partsman as defined in the Code of Federal Regulations. Complaint ¶ 17. Plaintiff's FLSA claim fails because he was exempt from the overtime provisions of the FLSA.

The FLSA mandates that non-exempt employees receive compensation for all hours worked in excess of forty (40) in a given workweek. 29 U.S.C. § 207(a)(1). The FLSA contains an exception from Section 207's overtime pay requirement for salesmen

and other employees working for automobile dealerships. Id. at § 213(b)(10)(A).

Specifically, the FLSA exempts:

> Any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers.

Id. In applying this exemption to particular jobs, courts have consistently concluded that service advisors and/or service writers with duties identical to those of Plaintiff fall within this exemption. See Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 451 (4th Cir. 2004); Brennan v. Deel Motors, Inc., 475 F.2d 1095, 1097 (5th Cir. 1973); Yenney v. Cass County Motors Co., 1977 WL 1678 at *3 (D. Neb 1977); Brennan v. Import Volkswagen, Inc., 1975 WL 1248 at *3 (D. Kan. 1975); Brennan v. North Brothers Ford, 1975 WL 1074 at *3 (E.D. Mich. 1975).

The Fourth Circuit's decision in Walton, which relied extensively on the Fifth Circuit's decision in Deel Motors, Inc., is instructive to the case at bar. Indeed, it is nearly identical to the case presently before the court. In Walton, the court determined that the appropriate inquiry in determining whether the automobile dealership exemption applies to a service advisor is to determine whether the person is a "salesman . . . primarily engaged in . . . servicing automobiles." Walton, 370 F.3d at 452 (citation omitted). Mr. Walton's duties included "greet[ing] customers, listen[ing] to their concerns about their cars, writ[ing] repair orders, follow[ing]-up on repairs, and keep[ing] customers informed about maintenance. Id. at 449. Mr. Walton also suggested additional services that needed to be performed and prepared work orders. Id. In concluding the FLSA's exemption applied to Mr. Walton, the Fourth Circuit concluded:

> [T]he undisputed facts showed that Walton promoted and
> attempted to sell goods and services provided by [the dealership],
> openly solicited business by telephone, and his hours were
> irregular, based on the needs of [the dealership's] customers.
> Indeed, the undisputed facts of Walton's employment demonstrate
> that he was the dealer's first line service sales representative, and
> his job required the satisfaction of customer and vehicle related
> problems, and meeting pre-determined service sales objectives.

Id. at 452 (quotation omitted). In further support of this decision, the Fourth

Circuit also was influenced by the fact that Mr. Walton was paid, in part, by commissions

based on the number of repair orders he completed. Id. at 449. Quite simply, Plaintiff's

duties were virtually identical to Mr. Walton's duties and, as such, Plaintiff too should be

deemed exempt from the FLSA.[2] See also Deel Motors, Inc., 475 F.2d at 1097-1098

(concluding that service advisors are exempt from the FLSA under the automobile

dealership exemption because they promote and attempt to sell the dealership's parts and

services by openly soliciting business by telephone and working irregular hours

depending on the needs of the customers).

Like Mr. Walton, Plaintiff was the "first line service sales representative" for

Bernardi's. Plaintiff greeted customers, presented estimates to them and solicited their

authorization to perform the repairs. In order to facilitate service sales process, Plaintiff

was required to communicate with the technicians and foremen, answer phone calls,

schedule appointments. Plaintiff was further required to call customers with the final bill

and review the final repairs. Indeed, just as in Walton where customer satisfaction was

the ultimate goal, Mr. Lingley was expected to go to "extremes" to satisfy his customers.

---

[2] In holding that the service advisor was exempt under the automobile exemption, the Fourth Circuit explicitly rejected the Department of Labor's interpretive regulation that the term "salesman" referred to in the automobile exemption is limited to individuals who sell vehicles as opposed to sell service. See 29 C.F.R. § 779.372(c)(1); Walton, 370 F.3d at 452. In so holding, the Fourth Circuit concluded that the interpretive regulation was "an impermissibly restrictive construction of the [FLSA]." Id.

Exhibit A attached to Voss Aff. Finally, and significantly, as further evidence of the role Plaintiff played in the sales performance of the Service Department, part of his compensation were a commission based on sales and appointments booked. Id.; see also Exhibits B and C attached to Voss Aff. Like the employees in Walton and Deel Motors, Inc., Plaintiff should be deemed exempt from the overtime protections of the FLSA and his FLSA claim should be dismissed.

## III.    PLAINTIFF IS NOT ENTITLED TO OVERTIME COMPENSATION UNDER MASSACHUSETTS LAW

Plaintiff also alleges that he is entitled to overtime compensation pursuant to G.L. c. 151 § 1A. See Complaint, Count II. Plaintiff's state law claim must be dismissed because he failed to exhaust his administrative remedies. Moreover, even if he did pursue his administrative remedies, Plaintiff is not eligible for overtime compensation as a matter of Massachusetts's law.

### A.    Failure to Exhaust Administrative Remedies

An employee is only allowed to bring a civil action for violation of the Wage and Hour Laws, including the overtime provisions contained in G. L. c. 151, after first filing a complaint with the Massachusetts Attorney General's Office. G. L. c. 149 § 150. Specifically, G.L. c. 149 § 150 provides that "Any employee claiming to be aggrieved by a violation of …section 19 of chapter 151 may, at the expiration of ninety days after the filing of a complaint with the attorney general, or sooner, if the attorney general assents in writing…institute and prosecute in his own name…a civil action for injunctive relief and any damages incurred…" Chapter 151, section 19(2) provides punishment for any employer "who knowingly pays …to any employee less than the rates applicable to such employee under a regulation minimum fair wage…"

8

In construing the Wage and Hour Laws, the Massachusetts Attorney General includes the Massachusetts overtime provisions.  See Advisory 98/2: An Advisory from the Attorney General's Fair Labor and Business Practices Division on the Amendments to the Wage Enforcement Laws[3] (referring to the "Prevailing Wage Law," the "Payment of Wages Law" and the "Minimum Wage Law," which includes the overtime provisions, collectively as the "Wage and Hour Laws.").  The Attorney General's Advisory Opinion reiterates the requirement that a claim for overtime compensation must first be filed with the Attorney General's office before a civil action may be commenced.  Id.  ("[t]he law continues to offer an employee a right to institute a private civil action against an employer for violations of the Wage and Hour Laws at the expiration of 90 days after the filing of a complaint with the Attorney General, or sooner if the Attorney General assents in writing.").

In the case at bar, Plaintiff has failed to allege that he satisfied his administrative requirement by filing a complaint with the Attorney General's Office.  Indeed, Bernardi's is not aware that any such administrative complaint was filed.  Accordingly, Plaintiff's state law claim must be dismissed as Plaintiff has not sought his administrative remedies as required by the law of Massachusetts.

**B.      Even if Plaintiff Exhausted his Administrative Remedies, He is not Eligible for Overtime Compensation Pursuant to Massachusetts Law**

Like its federal counterpart, the Massachusetts overtime provisions exclude certain categories of employees from overtime compensation.  One such category of employees exempt from receipt of overtime are "garagem[e]n, which term shall not include a parking lot attendant."  G.L. c. 151 § 1A(15).  Although, there is a dearth of

---

[3] A copy of Advisory 98/2 is attached to this Memorandum as Attachment A.  The copy was obtained from Appendix F of Jeffrey L. Hirsch, Labor and Employment in Massachusetts, App. F-17 (2nd ed. 2004).

case law interpreting this exception, the similarities between the Massachusetts overtime provisions and the FLSA reveal that it is reasonable to assume that the "garageman" referred to in G.L. c. 151 §1A(15) is the same as the "salesman, partsman or mechanic" exempted from the FLSA in the automobile dealership exemption contained in 29 U.S.C. § 213(b)(10)(A).

It is well established that Massachusetts's law incorporates portions of the FLSA as part of its state overtime law. See e.g., 455 C.M.R. 2.01 (the term "regular hourly rate" shall not include "sums excluded under 29 U.S.C. § 207(e)); 455 C.M.R. 2.02(3) ("[t]he terms 'bona fide executive, or administrative or professional person in M.G.L. c. 151 §1A(3) shall have the same meaning as set forth in Part 541 of Title 29 of the U.S. Code of Federal Regulations."). Indeed, the Supreme Judicial Court recently acknowledged that the "overtime provisions under State law were intended to be essentially identical to Federal law." Swift v. Autozone, Inc., 441 Mass. 443, 447 (2004) (quotation omitted).

Within this framework, the term "garageman" excluded from Massachusetts law is very similar to the FLSA's exemption for a salesman, partsman and mechanic in a non-manufacturing automobile dealership. In fact, the Supreme Judicial Court has concluded that "garageman" as the term, is used in G.L. c. 151 §1A(15), does not refer to individuals working in parking garages. Fitz-Inn Auto Parks, Inc. v. Commissioner of Labor & Industries, 350 Mass. 39 (1965). Moreover, the court concluded that the plain meaning of the term is that it refers to people who work in a garage. Id. at 40. This is precisely where a Service Advisor works. None of the nineteen (19) other exceptions to the Massachusetts overtime provision are similar to the automobile exception in the

FLSA. Given that the intent of Massachusetts law is to be "essentially identical" with the FLSA, and the fact that Massachusetts law does not contain another exception even remotely similar to the "salesman, partsman and mechanic" described in 29 U.S.C. § 213(B)(10) other than the reference to "garageman," it is reasonable to interpret that the two provisions similarly. Autozone, Inc., 441 Mass. at 447.

### III.  ONCE THIS COURT DISMISSES THE FEDERAL CLAIMS, IT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Plaintiff invokes this court's jurisdiction by relying on the FLSA, which provides federal courts with jurisdiction over claims for overtime compensation made pursuant to that statute. Complaint ¶ 1. However, once this court dismisses Plaintiff's FLSA claim for the reasons set forth above, it should follow the First Circuit's direction and decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. Cannarozzi v Fiumara, 371 F.3d 1, 7 (1st Cir. 2004) (upholding the district court's refusal to exercise jurisdiction over plaintiff's state law claims after the federal claims were dismissed). It is well established that a district court may decline supplemental jurisdiction over a related state law claim once the claims giving rise to original federal jurisdiction have been dismissed. To that end, 28 U.S.C. § 1367(c) provides, in relevant part, that:

> (c )    The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:
>
> . . .
>
> (3)    the district court has dismissed all claims over which it has original jurisdiction.

28 U.S.C. § 1367(c). Thus, although not required, "[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any

supplemental state-law claims." <u>Rodriguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1177

(1st Cir. 1995).  Although not exhaustive, the list of factors considered by the court when

deciding whether to exercise supplemental jurisdiction includes: judicial economy,

convenience, fairness, running of a statute of limitations and the clarity of the law that

governs the pendent claim.  <u>Id.</u>

      Here, all the factors weigh heavily in favor of dismissing the supplemental state

law claim for overtime.  This case is in its earliest stages.  The parties have conducted no

discovery, and there has been no activity before this court on the merits of Plaintiff's

claims.  Moreover, there remain significant outstanding legal issues that need to be

decided by a court of the Commonwealth of Massachusetts.  Namely, are "garageman"

exempt from the Massachusetts overtime provisions like a "salesman, partsman or

mechanic" under 29 U.S.C. § 213(B)(10)?  There is simply no reason why, at this early

juncture, the court should clutter its docket with what is, if anything, a purely state law

action.  Therefore, the court should follow the First Circuit's holding in <u>Cannarrozzi</u>, 371

F.3d at 7, and dismiss Plaintiff's state law claims.

12

## CONCLUSION

WHEREFORE, for the foregoing reasons, Bernardi's respectfully requests that

this Court dismiss Plaintiff's Complaint.

BERNARDI'S, INC
By its Attorneys,


_____/s/ Gary M. Feldman_____
Gary M. Feldman, BBO # 162070
David M. Cogliano, BBO#630158
**DAVIS, MALM & D'AGOSTINE, P.C.**
One Boston Place
Boston, MA 02108-4470
(617) 367-2500

Dated: June 16, 2005

13

# ATTACHMENT A

APPENDIX F

# ADVISORY 98/2

### An Advisory from the Attorney General's Fair Labor and Business Practices Division on the Amendments to the Wage Enforcement Laws

Pursuant to G.L. c. 23, § I (b), the Office of the Attorney General issues the following Advisory:

## INTRODUCTION

The following wage laws recently have been amended by the General Court (St. 1998, c. 236):

G.L. c. 149, §§ 26–27H: Prevailing Wage Law
G.L. c. 149, §§ 148–148B: Payment of Wage Law
G.L. c. 15 1, § 19: Minimum Wage Law
G.L. c. 151, §§ 1B, 19: Overtime Wage Law

On November 5, 1998, the amendments to the Payment of Wage, Minimum Wage, Overtime Wage and Prevailing Wage statutes become effective. To the extent that the amendments apply to publicly bid public works projects, they do not become effective for an additional 90 days.[1]

The amendments create a new civil enforcement mechanism and an expanded array of available remedies for various types of wage and hour law violations. The criminal penalty provisions also have been modified to increase substantially the range of available penalties. The Attorney General intends to continue to exercise these now-expanded wage enforcement powers judiciously and fairly based upon the applicable law and facts of each case.

## STATUTES AMENDED

The following provisions of the Massachusetts General Laws have been amended to provide for an enhanced range of available criminal penalties and to provide the Attorney General with the authority to enforce the applicable wage laws through a new civil administrative process:

- G.L. c. 149, § 26, which sets forth the criteria for determining the prevailing wage rate;
- G.L. c. 149, § 27, which provides requirements for the payment of the prevailing wage rate or rates on public works construction projects;

---

1.  If the bid opening date for a public works project occurs prior to February 4, 1999, violations that occur on such a project can only be prosecuted criminally and the employer is subject to only the penalties that were in effect prior to the effective date of the amendments.

LABOR AND EMPLOYMENT IN MASSACHUSETTS

- G.L. c. 149, § 27B, which sets forth the requirements for employee and payroll records that must be kept by contractors and subcontractors engaged in public works construction;
- G.L. c. 149, § 27C, which enumerates the penalties and sanctions for the violation of certain wage and hour laws, as well as the civil citation and appeals process;
- G.L. c. 149, § 27F, which provides requirements for the payment of the prevailing wage rate or rates to operators of rental equipment;
- G.L. c. 149, § 27G, which sets forth the requirements for the payment of the prevailing wage rate or rates for moving contractors;
- G.L. c. 149, § 27H, which sets forth the requirements for the payment of the prevailing wage rate or rates for maintenance or cleaning contractors who contract with the Commonwealth;
- G.L. c. 149, § 148, which requires the timely payment of wages;
- G.L. c. 149, § 148A, which provides for the protection of employees asserting rights under the provisions of chapter 149;
- G.L. c. 149, § 148B, which establishes a presumption of employment;
- G.L. c. 151, § I B, which requires the payment of overtime compensation; and
- G.L. c. 151, § 19, which provides penalties for the following violations:

§ 19(1), which provides for the protection of employees complaining about violations of chapter 151;

§ 19(2), which provides penalties for paying less than the minimum wage;

§ 19(3), which provides penalties for paying less than $1.60 per hour to employees in agriculture and farming;

§ 19(4), which provides penalties for falsifying records, for failing to provide records to and/or for hindering or delaying inspection by the Attorney General; and

§ 19(5), which provides penalties for requesting or requiring an employee to return all or a portion of his or her wages, and/or for threatening, coercing or intimidating an employee in order to induce the employee to accept less than the wages due.

## THE NEW PENALTY STRUCTURE

The amendments to G.L. c. 149, § 27C, have resulted in an enhanced range of penalties for criminal violations of G.L. c. 149, §§ 26–27H (the "Prevailing Wage Law"), c. 149, §§ 148 and 148B (the "Payment of Wages Law") and c. 151, §§ IA, IB and 19 (the "Minimum Wage Law") (collectively referred to as the "Wage

APPENDIX F

and Hour Laws"). There are more serious penalties for violations which are willful or intentional.[2]

Employers[3] who violate these laws now also face alternative civil penalties which may be imposed by the Attorney General through an administrative process.

In addition, the Anti-Retaliation Provision found in G.L. c. 149, § 148A, has been amended to include severe penalties where an employer penalizes his or her employee for making a wage-related complaint or cooperating in a wage enforcement investigation. See "Anti-Retaliation Provision" section, below, at p. App. F-26.

The law continues to offer an employee a right to institute a private civil action against an employer for violations of the Wage and Hour Laws at the expiration of 90 days after the filing of a complaint with the Attorney General, or sooner if the Attorney General assents in writing. If an employee prevails in his or her lawsuit, he or she can be awarded treble damages and attorneys' fees by the court. G.L. c. 149, § 150.

As in the past, the Attorney General, where appropriate and unless circumstances dictate otherwise, will give employers an opportunity to respond to an employee's complaint before taking civil or criminal action.

## I.   CRIMINAL PENALTIES

### A.   SENTENCES FOR VIOLATION OF ANY WAGE AND HOUR LAW

Where a court finds an employer guilty of violating any of the above-referenced Wage and Hour Laws *without willful intent* to do so, the employer faces the following criminal penalties:

| First Offense | Subsequent Offense |
|---|---|
| Fine up to $10,000 | up to $25,000 |
| Jail up to 6 months | up to 1 year |

G.L. c. 149, § 27C(a)(2).

---

2.   Willful and intentional conduct are nearly synonymous. Willful conduct is defined as intentional rather than accidental. *See, e.g.,* Commonwealth v. Armand, 411 Mass. 167, 170 (1991).

3.   An employer can take many forms. It can be corporate or non-corporate, private or public. Where a corporation is concerned, an employer is the corporation, "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation. . . . G.L. c. 149, §§ 27 and 148; G.L. c. 15 1, § 19. Where non-corporate, an employer is either a sole proprietor, a general partner, trustee, or a designated agent having the management of the organization or company. With regard to public employment, the employer is "the public officer whose duty it is to pay money, approve, audit or verify pay rolls, or perform any other official act relative to payment of any public employees." G.L. c. 149, § 148.

LABOR AND EMPLOYMENT IN MASSACHUSETTS

Where a court finds an employer guilty of *willfully* violating any of the above-referenced Wage and Hour Laws, the employer faces the following criminal penalties:

| **First Offense** | **Subsequent Offense** |
|---|---|
| Fine up to $25,000 | up to $50,000 |
| Jail up to 1 year | up to 2 years |

G.L. c. 149, § 27C(a)(1).

## B.  DEBARMENT RESULTING FROM A CRIMINAL VIOLATION OF THE PREVAILING WAGE LAWS

In addition to fines and jail, the law provides for debarment from public works construction, as follows:

**Debarment Resulting from a Criminal Conviction**

| | **First Offense** | **Subsequent Offenses** |
|---|---|---|
| Violation without intent: | 6-month debarment | 3-year debarment |
| Willful violation: | 5-year debarment | 5-year debarment |

G.L. c. 149, § 27C(a)(3).

The debarment provisions are more fully set forth in the "Summary of Debarment Provisions" section, below.

## II.  CIVIL PENALTIES

### A.  CIVIL CITATION

The Attorney General may now issue a civil citation or written warning to an employer for each violation[4] of the Wage and Hour Laws. A citation may require that:

(1)  the infraction be rectified, i.e., mandating that the employer fully comply with the Wage and Hour Laws; and/or

(2)  restitution be paid to the employee or employees; and/or

(3)  a civil penalty[5] be paid to the Commonwealth.

G.L. c. 149, § 27C(b)(2).

---

4.   The statute states that "each failure to pay an employee the appropriate rate or prevailing rate of pay for any pay period may be deemed a **separate** violation, and the pay period shall be a minimum of 40 hours unless such employee has worked fewer than 40 hours that week." G.L. c. 149, § 27C(b)(1).

5.   The factors that the Attorney General will consider in determining the amount of an appropriate civil penalty are discussed in the "Determining Civil Enforcement Sanctions" section, below.

APPENDIX F

Where an employer is found to have *unintentionally* violated the law, the available civil penalty is as follows:

| **First Offense** | **Subsequent Offense** |
|---|---|
| up to $7,500 in total | up to $25,000 per violation |

G.L. c. 149, § 27C(b)(2).

Where an employer is found to have *intentionally violated* the law, the available civil penalty is as follows:

| **First Offense** | **Subsequent Offense** |
|---|---|
| up to $15,000 in total | up to $25,000 per violation |

G.L. c. 149, § 27C(b)(2).

The employer has a statutory right to an administrative appeal of a civil citation issued by the Attorney General.[6] An employer who does not appeal a citation must comply with the requirements set forth therein within 21 calendar days of the date the citation was issued.[7]

**B.   DEBARMENT RESULTING FROM A CIVIL VIOLATION OF THE PREVAILING WAGE LAW**

In addition to fines, the law provides for debarment from public works construction as follows:

**Debarment Resulting from Issuance of Civil Citation**

| | |
|---|---|
| Three citations for the intentional violation of the prevailing wage law issued on three different occasions:[8] | 3-year debarment (from the date of issuance of the third citation) |
| Failure to comply with the requirements set forth in a citation or DALA order: | 1-year debarment (from the date of issuance of the citation or order) |

G.L. c. 149, § 27C(b)(3).

The debarment provisions are more fully set forth in the "Summary of Debarment Provisions" section, below.

---

6.   The process for citation and appeal therefrom are more fully set forth in the "Appeal from a Civil Citation" section, below.

7.   The law provides additional sanctions where an employer fails to comply with a civil citation. See "Failure to Comply with a Civil Citation" section, below.

8.   An "occasion" is defined as the date of issuance of a citation by the Attorney General.

## C.  ADDITIONAL SANCTIONS FOR A CIVIL VIOLATION OF THE PREVAILING WAGE LAW

### 1.  Order to File a Bond [9]

In addition to issuing a civil citation for a violation of the Prevailing Wage Law, the Attorney General also may order that the employer provide "a bond in an amount necessary to rectify the infraction and to ensure compliance with [the Prevailing Wage Law], and with other provisions of law. . . ." The bond is to be filed with the Attorney General and conditioned upon the payment of the prevailing wage rate or rates that were established for the specific public works project upon which the contractor's or subcontractor's employees are working. G.L. c. 149, § 27C(b)(3).

### 2.  Cessation of Work

If an employer fails to comply with the requirements set forth in an issued civil citation, the Attorney General may order the cessation of all of the work, or of the portion of the work being performed by the violating contractor or subcontractor, on the project site where the violation was discovered. G.L. c. 149, § 27C(b)(3).

## FACTORS THE ATTORNEY GENERAL WILL CONSIDER IN DETERMINING THE METHOD OF ENFORCEMENT

## I.  DETERMINING COURSE OF ACTION

All alleged violations will be investigated *before* the Attorney General decides whether to proceed, if at all, with a criminal prosecution or a civil enforcement action. The following criteria, among others, may be considered in determining whether the Attorney General will proceed with a criminal or civil action:

- Did the employer have actual knowledge of the alleged violation?
- Did the employer deceive or defraud its employees or others during the course of, or in connection with, the alleged violation?
- Has the employer previously violated the Wage and Hour Laws?
- Has the employer violated other related state or federal statutes (e.g., failure to pay required unemployment taxes or workers compensation premiums)?[10]

---

9.  Note that there is different bond provision in G.L. c. 149 § 27 (the "Penal Bond Provision"). Pursuant to Penal Bond Provision, the Attorney General may conduct a hearing and order a penal bond which the employer must file in order to proceed with work. This decision is appealable to the Superior Court.

10.  Employers are urged to contact the Department of Employment and Training and the Department of Industrial Accidents to inquire about employers' obligations
(continued...)

APPENDIX F

- Has the employer previously been convicted of larceny, fraud or a similar offense?
- Is there other evidence of the employer's exploitation of its employees?
- Has the employer retaliated against its employees for reporting an alleged violation?
- Has the employer violated the statutes that authorize the Attorney General to inspect the workplace and examine employment or certified payroll records?
- Was there a single alleged violation or multiple violations?
- Has the employer made any restitution payments to its employees?
- Did the employer fail or refuse to comply with a civil citation?

The facts and circumstances of each individual case will dictate the weight and importance which will be accorded to each of these factors. In addition, the Attorney General will determine if the violation was willful or intentional based upon an assessment of the facts and the law.

## II. DETERMINING CIVIL ENFORCEMENT SANCTIONS

If the Attorney General substantiates an alleged wage violation after an investigation and chooses to exercise his civil enforcement authority by issuing a citation, the following standards will apply in determining the appropriate civil sanctions to be imposed:

(1) A written order to comply with the Wage and Hour Laws will be issued in every case, absent extraordinary circumstances.

(2) A written order of full restitution will be issued in every case, unless the employee already has recovered the total wages owed.

(3) Penalties will be assessed based on an evaluation of the facts and circumstances of the particular case.

As required by law, the Attorney General will take into account the following factors in determining the penalty imposed pursuant to a citation:

(a) previous violations of the Wage and Hour Laws by the employer;

(b) the employer's intent to violate the Wage and Hour Laws;

(c) the number of employees affected by the violation(s);

(d) the monetary extent of the violation(s); and

(e) where there is a violation of the Prevailing Wage Law, the total amount of the public works contract or the amount of the payroll.

---

(...continued)

under Massachusetts General Laws Chapters 151A and 152. The Attorney General will refer violations of these and other laws to the appropriate authorities for further investigation and retains the right to enforce these statutes, whether independently or as part of a wage enforcement action, where appropriate.

LABOR AND EMPLOYMENT IN MASSACHUSETTS

Willful or intentional violations will result in more severe sanctions. Escalating penalties and sanctions will be imposed for each subsequent offense.

## APPEAL FROM A CIVIL CITIATION

### I.  APPEAL PROCESS

An employer who has received a civil citation or order may appeal to the Division of Administrative Law Appeals ("DALA"). The employer must file a notice of appeal with the Attorney General and DALA within 10 *days* of receipt of the citation. G.L. c. 149, § 27C(b)(4). The employer should send this notice by certified mail or other verifiable method. *See* 801 CMR 1.01(4).

An employer appealing a citation or order will be granted a hearing before DALA in accordance with the provisions of G.L. c. 30A and 801 CMR 1.00 *et seq.* After the hearing, DALA may affirm the citation, vacate the citation or modify the citation. G.L. c. 149, § 27C(b)(4).

An employer who is aggrieved by DALA's decision may petition for a rehearing before DALA or appeal to the Superior Court pursuant to G.L. c. 30A, § 14. The time periods for these filings are set forth in G.L. c. 30A, § 14(l).

### II.  EFFECT OF APPEAL ON PENALTIES

In Prevailing Wage matters, a DALA decision to debar or suspend a contractor does not take effect until 30 days after issuance of the DALA order. The contractor cannot *bid* on any new contracts during that 30-day period unless the Superior Court temporarily enjoins the order of debarment or suspension. G.L. c. 149, § 27C(b)(5). However, the contractor may complete any ongoing work and may execute any new contract that was awarded based upon a bid submitted prior to DALA's finding.

The time for payment of any civil penalty and restitution is stayed until 30 days after DALA renders its decision on the appeal. If a further appeal is taken, the 30-day period is stayed pending judicial review of DALA's decision. G.L. c. 149, § 27C(b)(6).

## FAILURE TO COMPLY WITH A CIVIL CITATION

An employer who fails to comply with a civil citation after the period of appeal has expired, or after all avenues of appeal are exhausted, is subject to a mandatory lien and, in the case of a prevailing wage law violation, a mandatory debarment, and may face criminal prosecution and/or a stop-work order.

APPENDIX F

## I. LIENS AGAINST REAL PROPERTY AND PERSONAL PROPERTY

Any delinquent civil penalty payment will result in a lien being placed upon the real estate and personal property of the employer who fails to pay that penalty. The lien will be imposed if an assessed penalty is not paid in full:

(a)  *within 21 days* from the issuance of the citation; or

(b)  where the citation is appealed to DALA, *within 30 days* after DALA's decision (excluding any period of judicial review).

G.L. c. 129, § 27C(b)(7).

The lien will be in the amount of the outstanding unpaid portion of the assessed civil penalty plus interest thereon at the rate of 18% per annum. The lien will be considered a tax due and owing to the Commonwealth and may be collected through the procedures provided for by G.L. c. 62C.

The lien upon real estate and personal property of any person who fails to pay any civil penalty imposed by citation shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until and unless notice thereof has been recorded or filed in the registry of deeds or land registration office of the county or district where such real estate is situated. *See* G.L. c. 62C, § 50(b). In the case of registered land, the lien is not valid until and unless noted on the certificate of title of the owner. In the case of personal property, the lien is not valid until and unless filed in the office in which a security or financing statement or notice would ordinarily be filed. Any notice of lien shall contain the name of the obligor and his or her address, taxpayer identification number or social security number, and the amount of the outstanding civil penalty imposed. *See* G.L. c. 149, § 27C(b)(7).

## II. DEBARMENT

If a contractor or subcontractor is cited for violation(s) of the prevailing wage law(s), and absent an appeal or after an unsuccessful appeal, fails to comply with the requirements set forth in the civil citation or order, the contractor or subcontractor will be debarred for *one year* from the date of issuance of such citation or order. G.L. c. 149, § 27C(b)(3).

## III. CRIMINAL PROSECUTION

The Attorney General may seek a criminal complaint against an employer if the employer fails to comply with a citation and/or pay the civil penalty or restitution within *21 days* from the date the citation was issued, unless the employer appeals the citation. G.L. c. 149, § 27C(b)(6).

Where DALA affirms or modifies a citation, and the employer does not comply with the affirmed or modified citation *within 30 days* after DALA's decision, the Attorney General may seek a criminal complaint. If a further appeal is taken, the

LABOR AND EMPLOYMENT IN MASSACHUSETTS

30-day period is stayed pending judicial review of DALA's decision. G.L. c. 149, § 27C(b)(6).

## IV. CESSATION OF WORK

If an employer fails to comply with the requirements set forth in an issued civil citation, the Attorney General may order the cessation of all of the work, or of the portion of the work being performed by the violating contractor or subcontractor, on the project site where the violation was discovered. G.L. c. 149, § 27C(b)(3).

## SUMMARY OF DEBARMENT PROVISIONS

A contractor or subcontractor may be debarred from public works construction under both the civil and criminal penalty provisions of the amended statute. When a contractor or subcontractor is debarred s/he is "prohibited from contracting, directly or indirectly, with the [C]ommonwealth or any of its agencies, authorities or political subdivisions for the construction of any public building or other public works or from performing any work on the same as a contractor or subcontractor. . . . G.L. c. 149, § 27C(a)(3).

The scope of a debarment has been expanded by the new amendments to include a debarment of "all affiliates of the contractor or subcontractor, as well as any successor company or corporation that [the] attorney general, upon investigation, determines to not have a true independent existence apart from that of the violating contractor or subcontractor." G.L. c. 149, § 27C(b)(3).

If a contractor or subcontractor enters into a public works contract or works on a public works project during the period of his or her debarment, the Attorney General has the authority to commence an action in the Superior Court:

(1) to enjoin the awarding of a contract to the violating contractor or subcontractor; or
(2) to void a contract that has been wrongfully awarded; or
(3) to obtain a cease and desist order on any ongoing work being performed in violation of the debarment order.

G.L. c. 149, § 27C(a)(3).

## ANTI-RETALIATION PROVISION

General Laws c. 149, § 148A, always has required that "[n]o employee shall be penalized by an employer in any way as a result of any action on the part of the employee to seek his or her rights under the wage and hour provisions of [chapter 149]." However, the penalty for a violation of this law has been substantially increased under the new amendments. An employer who violates this provision now faces a potential fine of up to $50,000 and 6 months in jail if the employer "discharges or in any other manner discriminates against any employee because [that] employee has made a complaint to the attorney general or any other person,

APPENDIX F

or assists the attorney general in any investigation under [chapter 149], or has testified or is about to testify in any such proceedings."

## STATUTES OF LIMITATIONS

Each separate wage and hour statute contains a statute of limitations for the civil administrative remedies: three years for violations of the Prevailing Wage and Payment of Wages Laws and two years for violations of the Minimum Wage and Overtime Laws. The statutes of limitations for criminal prosecutions remain at 6 years from the date of offense for prevailing wage and payment of wage violations and at 2 years from the date of offense for overtime and minimum wage violations. However, under the discovery rule found in *Bowen v. Eli Lilly & Co., Inc.*, 408 Mass. 204, 205 (1990), the statute of limitations does not begin to run until the employee discovers or reasonably should have discovered that s/he has been harmed.

## ADVISORY 99/1

Pursuant to G.L. c. 23, § 1(b), the Attorney General issues the following Advisory (September 7, 1999)

## VACATION POLICIES

### VACATION PAYMENTS ARE WAGES

Employers who choose to provide paid vacation to their employees must treat those payments like any other wages under G.L. c. 149, § 148. *See, Massachusetts v. Morash*, 490 U.S. 107 (1989). Like wages, the vacation time promised to an employee is compensation for services which vests as the employee's services are rendered. Upon separation from employment, employees must be compensated by their employers for vacation time earned *"under an oral or written agreement."* G.L. c. 149, § 148. Withholding vacation payments is the equivalent of withholding wages and, as such, is illegal.

Employers may establish the terms of employment and determine the hourly rate or salary to be paid as well as how many hours the employee is expected to work. Employers may likewise establish the amount of paid vacation the employee will receive and/or a specific time of the year when the employee can take a vacation, depending on the needs or demands of the business. Employers may establish procedures regarding the scheduling of vacations (*i.e.*, whether employees must notify the employers as to their intent to take vacation, when they intend to take it, and how much vacation time they plan to take).

### NO FORFEITURE OF EARNED VACATION TIME

General Laws c. 149, § 148 provides that no employer shall *"by special contract with an employee or by any other means exempt himself"* or herself from the statute or from its penalty provision in Section 150. Since the statute provides